IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. as Trustee for $3,160,000 The Medical Clinic Board of the City of Montgomery – 1976 East First Mortgage Revenue Bonds (Oaks Partners Two, LLC Project), Series 2010A and as Trustee for $590,000 The Medical Clinic Board of the City of Montgomery 1976 East First Mortgage Revenue Bonds (Oaks Partners Two, LLC Project), Taxable Series 2010B, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:20cv231-MHT (WO) |
| CHRISTOPHER F. BROGDON, et al., | ) ) ) | |
| Defendants. | ) | |

## OPINION

Pursuant to Georgia law, plaintiff Wells Fargo Bank, N.A. filed this lawsuit claiming that defendants Christopher F. Brogdon, Connie B. Brogdon, and Brogdon Family, L.L.C., breached a guaranty agreement and owe

attorney's fees.  This court has jurisdiction pursuant to 28 U.S.C. § 1332(a) (diversity).

The case is currently before the court on the bank's motion for summary judgment.  For the reasons that follow, the motion will be granted.

## I. Summary-Judgment Standard

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To determine whether a genuine factual dispute exists, the court must view the factual allegations in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the party seeking

summary judgment has informed the court of the basis for his motion, the burden shifts to the non-moving party to show that a genuine issue of material fact exists. *See Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994). In general, summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

## II. Factual Background

The facts taken in the light most favorable to the Brogdon defendants are as follows.

This case stems from a series of agreements entered to facilitate the purchase of an assisted-living facility. A May 2010 agreement between Wells Fargo and The Medical Clinic Board of the City of Montgomery 1976 - East made the bank the indenture trustee for bonds issued by the board to purchase an assisted-living facility in Montgomery County, Alabama and to renovate

the facility.  *See* Trust Indenture (Doc. 1-1).  Oak Partners Two, LLC, was named in the agreement as the beneficiary of the bond issuance, and the board leased the facility to Oaks Partners Two through a separate lease agreement.  *See* Lease Agreement (Doc. 1-2). Christopher Brogdon was the manager of Oaks Partners Two and signed the lease in that capacity.  Finally, Christopher and Connie Brogdon, as well as the Brogdon Family, LLC, entered into a guaranty agreement with Wells Fargo where they agreed to be responsible for Oak Partners Two's financial obligations under the lease. *See* Guaranty Agreement (Doc. 1-3); *see also* Lease Agreement (Doc. 1-2) at 6.  Starting in 2012, Oak Partners Two defaulted on the lease, and Christopher and Connie Brogdon and Brogdon Family, LLC defaulted on their obligations under the guaranty agreement.

Previously, in 2013, Wells Fargo filed a lawsuit in this court against Christopher and Connie Brogdon and the Brogdon Family, LLC (and others) seeking, among other

4

relief, to recover the debt owed under the guaranty agreement. *See Wells Fargo Bank, N.A. v. The Medical Clinic Bd. of the City of Montgomery-1976 East, et al.*, No. 2:13-cv-00003-WHA-WC (M.D. Ala. Aug. 01, 2017) The court dismissed the suit without prejudice in August 2017 following the commencement, by the Securities and Exchange Commission, of securities-fraud litigation in New Jersey against Christopher and Connie Brogdon, and the New Jersey District Court's entry of a stay in that litigation of most lawsuits against them. *See id.* (Doc. 94-1 at 20, Doc. 95, & Doc. 96); *Securities and Exchange Commission v. Brogdon, et al.,* No. 2:15-cv-08173-KM-JBC (D.N.J. Jan. 17, 2020). The New Jersey court appointed a monitor charged with overseeing the selling of property so Christopher and Connie Brogdon could repay the many investors to whom they owed money. *See* New Jersey Litigation Judgment (Doc. 56-1) at 8-10. The Brogdons were required to propose a plan to repay investors and

to obtain approval for the plan from the monitor. *See id.* at 9-10.

In 2017, Christopher and Connie Brogdon filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of Georgia. *See In re: Brogdon*, No. 17-66172-pwb (Bankr. N.D. Ga. 2017). During the bankruptcy proceedings, they asked the court to approve the sale of the assisted-living facility for $ 2,100,000.00, and the court approved the sale, subject to the consent of Wells Fargo and the New Jersey monitor. *See* Sale Motion (Doc. 42-2) at 2; Order Granting Sale Motion (Doc. 42-1) at 2. The bankruptcy case was dismissed on March 7, 2018, without a discharge of the two Brogdons' debts.

In December 2017, Wells Fargo received proceeds from the sale of the assisted-living facility in the amount of $ 1,711,120.91, after subtracting the closing costs. Christopher and Connie Brogdon and the Brogdon Family, LLC executed an amendment to the guaranty agreement

reaffirming their obligations to the bank around the time of the closing of the sale.

As of May 21, 2021, the total amount owed by the Christopher and Connie Brogdon and the Brogdon Family, LLC was $ 2,145,285.00, consisting of $ 1,664,298.22 in principal and $ 480,986.78 in interest.

## III. Discussion

Wells Fargo seeks summary judgment on its two claims against the three defendants, Christopher and Connie Brogdon and the Brogdon Family, LLC: one for breach of contract based on the defendants' failure to repay their debts under the guaranty agreement, and another for attorney's fees pursuant to the agreement and Georgia law. In their answer to the complaint, the defendants raised a litany of defenses, and the bank attempted to address these defenses in its summary-judgment motion. During a pretrial conference held on October 13, 2021, the defendants conceded all of their defenses with two

exceptions. The court will begin by considering these two defenses before analyzing the bank's otherwise uncontested arguments for summary judgment.

## A. Argument for Reduction in Debt

The defendants argue that the amount of money that they owe Wells Fargo should be reduced because the assisted-living facility sold below market value and the bank is responsible for the allegedly low selling price. The court rejects this argument for several reasons.

First, the defendants have not offered competent evidence that the assisted-living facility sold below market value. As evidentiary support for this argument, they offer the declaration of Christopher Brogdon, in which he attests that the fair market value for the property was $ 3,840,000 and not the $ 2,100,000 selling price. *See* Christopher Brogdon's Decl. (Doc. 41-6) at 3. However, the declaration provides no foundation for this opinion, such as evidence of the selling price of

comparable properties at the time, and no such evidence is in the record. Nor have the defendants offered Christopher Brogdon as an expert on the subject, or provided an expert testimony on the matter. *See generally* Fed. R. Evid. 702. Moreover, the record shows that the Christopher and Connie Brogdon previously represented in their bankruptcy case that "the fair market value of ... [the facility was] approximately $ 2,100,000" in a motion asking the bankruptcy court to approve the facility's sale.[1]   Sale Motion (Doc. 42-2)

---

[1] Arguably, Christopher and Connie Brogdon should be barred from taking their current position on the fair market value of the assisted-living facility by the doctrine of judicial estoppel, a doctrine meant to prohibit parties from deliberately changing positions in order to gain an unfair advantage. Under the doctrine of judicial estoppel, parties are barred from taking a position inconsistent with one that was asserted by the same party in a prior proceeding. *See Ibf Participating Income Fund v. Dillard-Winecoff*, 573 S.E.2d 58, 59-60 (Ga. 2002).   Three factors determine the applicability of judicial estoppel, including: (1) that the party's current position is "clearly inconsistent" with its earlier position; (2) that the party previously succeeded in persuading the court to accept the earlier position; and (3) that the party seeking to assert an inconsistent

at 2.  As they have failed to provide evidentiary support for their current contention as to the market value of the facility, the defendants' argument fails.

Second, even if they had proved that the $ 2,100,000 selling price was below market value, the defendants have provided no competent evidence that the bank was responsible for the selling price.  The defendants argue that Wells Fargo was responsible for the selling price

---

position would derive an unfair advantage or impose an unfair detriment on the opposing party.  *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742 (2001)).  All three factors arguably weigh in favor of judicially estopping Christopher and Connie Brogdon from changing their position on the fair market value of the facility.  Their current position is clearly inconsistent with their prior position in the bankruptcy case that the $ 2,100,000 selling price of the facility was the fair market value. They successfully convinced the bankruptcy court to grant their motion to sell the facility for $ 2,100,000.  *See* Order Granting Sale Motion (Doc. 42-1) at 2.  Lastly, allowing them to assert this position would impose an unfair detriment on Wells Fargo, which signed off on the $ 2,100,000 selling price for the facility following the bankruptcy court's order.  Nevertheless, because the bank did not raise judicial estoppel and the defendants have not had a chance to respond to it, and because Brogdon Family, L.L.C. was not a party to the bankruptcy, the court does not decide whether judicial estoppel applies.

because it did not communicate with the monitor in the New Jersey Litigation. But the defendants have not shown that the bank was under any obligation to communicate with the monitor, and have not explained why--or offered evidence from which a reasonable jury could conclude that--the bank's alleged failure to communicate caused a low selling price. Furthermore, the record shows that Christopher and Connie Brogdon asked for approval for the sale of the facility at the selling price about which they now complain, *see* Sale Motion (Doc. 42-2) at 2, and that the bankruptcy court granted their motion, approving the sale subject to the consent of Wells Fargo. *See* Order Granting Sale Motion (Doc. 42-1) at 2. This evidence suggests that, while the bank had to consent to the sale, it was Christopher and Connie Brogdon who are primarily responsible for its occurrence. In sum, the record does not support the defendants' contention that Wells Fargo caused a too-low selling price.

Finally, the defendants have provided no legal authority in support of this argument. During the pretrial conference, defense counsel was unable to explain how the assisted-living facility's selling price justified reducing the debt defendants owed to Wells Fargo. The court is not required to do the defendants' work for them, and will not do so here.

Accordingly, the court rejects this argument against summary judgment.

## B. Laches

The defendants also argue that Wells Fargo's claims are barred by the affirmative defense of laches. For the reasons below, the court finds that the defendants have failed to establish this defense.

As mentioned previously, the guaranty agreement is governed by Georgia law. *See* Guaranty Agreement (Doc. 1-3) at 7. The laches defense is set forth in § 9-3-3 of the Georgia Code, which provides that "courts of

equity may interpose an equitable bar whenever, from the lapse of time and laches of the complaint, it would be inequitable to allow a party to enforce his legal rights." O.C.G.A. § 9-3-3. "In determining the viability of a laches defense, a trial court should consider the length of the delay, the sufficiency of the excuse, the loss of evidence on disputed matters, the opportunity for the claimant to have acted sooner, and whether the plaintiff or defendant possessed the property during the delay." *McGhee v. Johnson*, 492 S.E.2d 893, 893 (Ga. 1997). In addition, a defendant "must show prejudice from the delay." *Id.*

However, the defendants cannot rely upon a laches defense here. Under Georgia law, laches is not available as a defense to an action at law; the defense of laches is available only in suits in equity. *See, e.g., Kenerly v. Bryant*, 490 S.E.2d 454, 456 (Ga. Ct. App. 1997) ("'The equitable doctrine of laches is not applicable to [actions] at law....'") (citations omitted). An action

13

to enforce a guaranty is an action at law for which the defense of laches is not available. *See Branch Banking and Trust Co. v. Cooke*, No. 1:16-CV-4102-TWT, 2017 WL 4124217, at *2 (N.D. Ga. Sept. 15, 2017) (Thrash, J.) ("Actions to recover amounts owed under personal guaranties and promissory notes, like this one, are actions at law. Consequently, the defense of laches does not apply."); *see also Kenerly*, 490 S.E.2d at 456 (holding that the trial court erred in applying the doctrine of laches because the plaintiff's attempt to recover on promissory notes was an action at law). Because Wells Fargo's suit is an action at law, the laches defense is not available.

Even if a laches defense were available here, it would fail because the defendants have failed to show that they were prejudiced by any delay by Wells Fargo in asserting its claims. In an effort to establish prejudice, the defendants argue that the bank's failure to communicate with the monitor in a timely fashion or

to intervene in the New Jersey Litigation resulted in higher litigation costs and an undervaluation of the assisted-living facility. Had the bank communicated with the monitor, they contend, the monitor would have set a higher selling price for the facility, and the bank would have ultimately received more money from the sale of the facility; the lower purchasing price for the facility, they contend, in turn created the need for the present litigation and its associated costs. While the court must admit that the defendants' arguments here are confusing, it appears that their central premise is that Wells Fargo's alleged inaction caused the size of the present debt and the additional litigation costs generated by this case.

This argument fails because, as discussed earlier, the defendants have not shown the selling price would have been higher absent Wells Fargo's alleged failures to act. While they *argue* that the bank's failure to communicate with the New Jersey monitor resulted in a

lower selling price, they have not submitted *evidence* from which a reasonable jury could conclude that this is true. Assuming, without deciding, that the bank did not communicate with the monitor,[2] the defendants have not shown, with evidence, that, had the bank done so, the facility likely would have sold for a higher price. Nor, as discussed earlier, have they shown with competent evidence that facility sold for less than fair market value. Without competent evidence that the facility sold for less than it should have, the defendants cannot prove prejudice. Moreover, given that Christopher and Connie

---

2. The defendants arguably have not even submitted competent evidence that Wells Fargo did not communicate with the New Jersey monitor. They rely on Christopher Brogdon's assertion in his declaration that the bank failed to communicate with the monitor. *See* Christopher Brogdon's Decl. (Doc. 41-6) at 2. However, the defendants have presented no evidence from which a reasonable juror could conclude that Christopher Brogdon had personal knowledge of the bank's communications with the monitor. *See* Fed. R. Civ. P. 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge ..."). *See also Jefferson v. Sewom Am., Inc.*, 891 F.3d 911, 924-25 (11th Cir. 2018).

Brogdon specifically asked the bankruptcy court to approve the sale of the facility, representing that the selling price was fair market value, the court sees no evidence that the blame for the sale price belongs with anyone other than Christopher and Connie Brogdon themselves.

The court concludes that the defendants' laches argument does not bar the court from granting Wells Fargo's motion for summary judgment.

## C. Breach-of-Guaranty Claim

Wells Fargo argues that the court should grant summary judgment in its favor on its breach-of-guaranty claim because it has established its *prima facie* right to judgment on the guaranty agreement and the defendants have failed to prove any relevant affirmative defenses. The court agrees.

As previously noted, Georgia law governs the guaranty agreement. *See* Guaranty Agreement (Doc. 1-3) at 7. "The

elements for a breach of contract claim in Georgia are
the (1) the breach and the (2) resultant damages (3) to
the party who has the right to complain about the contract
being broken." *FieldTurf USA Inc. v. TenCate Thiolon
Middle E.*, 945 F. Supp. 2d 1379, 1396 (N.D. Ga. 2013)
(Thrash, Jr., J.) (quoting *Kuritzky v. Emory Univ.*, 669
S.E.2d 179, 181 (Ga. Ct. App. 2008)).    Under Georgia
law, the holder of a guaranty establishes a *prima facie*
right to judgment if the holder establishes: (i) the
existence of a guaranty; and (ii) the amount owed on the
underlying debt. *See Caves v. Columbus Bank & Trust Co.*,
589 S.E.2d Ga. App. 670, 673-74 (Ga. Ct. App. 2003).
When signatures are established, production of the
contract--here, the guaranty agreement--entitles a
holder to recover on it unless the defendant establishes
a valid defense with competent evidence. *See Dixie
Diners Atlanta, Inc, v, Gwinnett Fed, Bank, FSB*, 439
S.E.2d 53, 56 (Ga. Ct. App. 1993) (shifting burden to the

guarantors to establish an affirmative defense after bank made out a *prima facie* case).

Wells Fargo has established its *prima facie* case for breach of the guaranty agreement, and there is no genuine issue of material fact as to the defendants' liability under the agreement. A signed copy of the agreement is in the record, and Christopher and Connie Brogdon each admitted during their depositions that the signatures that appear on the document are theirs. Christopher Brogdon also admitted that he signed the agreement on behalf of the Brogdon Family, L.L.C. The bank has presented uncontested evidence that the defendants defaulted on the agreement by failing to make timely payments. In sum, the record indisputably establishes the defendants' breach. The bank has also provided uncontested evidence that, as of May 21, 2021, the defendants owed $ 2,145,285.00 under the guaranty agreement (excluding attorney's fees), consisting of $ 1,664,298.22 in principal and $480,986.78 in interest.

As discussed earlier, the defendants have raised no meritorious defenses. Accordingly, the court will grant summary judgment on the guaranty claim in the amount of $ 2,145,285.00 as of May 21, 2021.[3]

## D. Attorney's Fees Claim

In their second claim, Wells Fargo seeks attorney's fees from the defendants pursuant to the guaranty agreement and § 13-1-11 of the Georgia Code. Under the signed agreement, the defendants agreed to pay all of the bank's "expenses and charges (including court costs and reasonable attorney's fees) paid or incurred by the Trustee in enforcing the obligations of the Guarantors under the Agreement, whether the same shall be enforced by suit or otherwise." Guaranty Agreement (Doc. 1-3) at 4, § 2.03. Section 13-1-11 of the Georgia Code sets

---

3. If Wells Fargo wishes to seek additional monetary relief that has accrued since May 21, 2021, it may do so by filing a motion for such relief within 21 business days after judgment in this case.

forth rules for the enforcement of obligations to pay attorney's fees that are included in legally binding agreements. The statute provides that, "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt" under certain conditions. O.C.G.A. § 13-1-11(a). Those conditions include that "such note or other evidence of indebtedness ... [must be] collected by or through an attorney after maturity." *Id*. Additionally, the statute requires that any party seeking attorney's fees pursuant to a legally binding agreement is required to give written notice of its intent to the debt holder, and the debt holder is obligated to pay reasonable attorney's fees unless it pays the principal and interest on the debt in full within 10 days of receiving notice. *See* O.C.G.A. § 13-1-11(a)(3).

It is undisputed that Wells Fargo provided written notice to the defendants through the filing of the complaint in this case of its intent to seek attorney's fees.  It is also undisputed that the defendants failed to repay the money owed under the guaranty agreement within 10 days of service of the complaint.  Therefore, pursuant to § 13-1-11(a)(3), the bank is entitled to reasonable attorney's fees as defined by Georgia law.

The court next must determine reasonable fees. Section 13-1-11(a)(2) provides a method for calculating reasonable attorney's fees.  It states that, if an agreement "provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $ 500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." O.C.G.A. § 13-1-11(a)(2).

Because the guaranty agreement does not set forth a particular percentage as a basis for calculating reasonable attorney's fees, the formula in § 13-1-11(a)(2) applies. Wells Fargo's reasonable attorney's fees, calculated pursuant to the formula, equal $ 214,553.50 as of May 21, 2021. Accordingly, the court will grant summary judgment to Wells Fargo on its attorney's fees claim in the amount of $ 214,553.50 as of May 21, 2021.[4]

***

In sum, Wells Fargo has presented undisputed evidence to support both of its claims. Neither of the defendants' defenses is supported by the record. The bank has established for both of its claims that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

4. If Wells Fargo wishes to seek additional fee relief since May 21, 2021, it may do so by filing a motion for such relief within 21 business days after judgment in this case.

Fed. R. Civ. P. 56(a). Accordingly, the court will grant Wells Fargo's motion for summary judgment in its favor.

An appropriate judgment will be entered.

DONE, this the 1st day of November, 2021.

            /s/ Myron H. Thompson
         UNITED STATES DISTRICT JUDGE